OPINION
FISCHER, District Judge.
Plaintiff Stephanie Kanter appeals from an order of the District Court granting the motion to dismiss of defendants The Equitable Life Assurance Society of the United States; AXA Equitable Life Insurance Company; AXA Financial, Inc.; John Doe; and ZYZ Company. We conclude that the District Court erroneously applied New Jersey’s applicable statute of limitations to bar plaintiffs suit. Accordingly, we will vacate and remand.
On December 22, 1982, Stephen Schwartz, a dentist, enrolled in an annuity program (“the annuity”) provided by defendants for American Dental Association group members. The annuity’s terms gave Dr. Schwartz the ability to withdraw the annuity’s accrued cash value, but precluded the sale or assignment of any interest or amount payable under the annuity. In addition, the annuity stated that “[n]o amount payable ... will in any way be subject to any claim against [the] payee.”
Dr. Schwartz married in 1985. Mrs. Schwartz was never made a beneficiary of the annuity, and, on July 21, 1992, she executed a signed waiver of her right to receive survivor benefits under the annuity-
In 1996, after almost eleven years of marriage, Dr. Schwartz bludgeoned his wife to death with a claw hammer and fire extinguisher. He pleaded guilty to aggra *864 vated manslaughter on July 23, 1999, and received a twenty-year prison sentence.
In February 1997, prior to Dr. Schwartz’s guilty plea, Mrs. Schwartz’s Estate began notifying defendants that New Jersey’s “Slayer Act,” N.J. Stat. Ann. § 3B:7-1.1 et seq., might apply to the annuity. The Estate sent a letter to defendants containing an order prohibiting Dr. Schwartz from diminishing any of his assets without court permission. The letter also requested that defendants freeze all of Dr. Schwartz’s accounts. A similar letter and court order were sent in July 1999.
The court orders were eventually abrogated. Subsequently, Dr. Schwartz withdrew $93,750 from the annuity in December 1999.
Mrs. Schwartz’s Estate brought various actions against Dr. Schwartz, including, in a suit captioned Wasserman v. Schwartz, a novel claim for the
equitable distribution of ... marital assets that accumulated during the Schwartz’ ... marriage, [such as Dr.] Schwartz’ retirement and pension plan assets, because had he not terminated the[ ] marriage by slaying [his wife], and the marriage instead terminated by divorce, Mrs. Schwartz would have been entitled to an equitable distribution of their marital estate assets.
Wasserman v. Schwartz, 364 N.J.Super. 399, 836 A.2d 828, 830 (N.J.Super. Ct. Law Div.2001).
On June 29 and July 11, 2001, a bench trial occurred in the New Jersey Superior Court, Law Division, regarding the equitable distribution claim. Id. The trial was conducted “to identify and ascertain the value of all assets held by or for [Dr.] Schwartz’ benefit, including pension or retirement plan accounts; and to determine what portion should belong to the Schwartz’ marital estate, and what portion belonged] solely to [Dr.] Schwartz.” Id.
A certified public accountant with expertise in asset valuation and forensic accounting presented a report and testified on behalf of the Estate. Id. She
identified certain assets held by or for [Dr.] Schwartz’ benefit, their dates of acquisition; asset valuations as of the date of the marriage ...; asset valuations as of the date [of the homicide] ...; and the [then] current values of the assets.
In her report and testimony, [the accountant] further documented all the assets includible in the marital estate and their values, and concluded that the total value of all those assets includible in the marital estate [wa]s $929,726. That amount included marital estate assets [Dr.] Schwartz ha[d] spent since the day he killed his wife, such as ... [the] monies from [Dr.] Schwartz’ retirement accounts. Those marital estate assets also included $541,099 ... held in [Dr.] Schwartz’ name in his American Dental Association retirement plan, his IRA, and a Manulife annuity account.

Id.

The Wassennan court accepted the Estate’s novel claim for equitable distribution. Id. at 833-34. Using its equitable powers, the court determined that even though the Schwartz’s marriage had ended by homicide and not divorce, Mrs. Schwartz’s Estate was entitled to a share of the marital assets and those assets, like the annuity, held solely in Dr. Schwartz’s name. Id. at 831-34. Judgment for $681,338 was entered in the Estate’s favor on September 14, 2001. Id. at 839. The Estate was only able to collect approximately $390,000 of the award.
On February 13, 2007, plaintiff, a Florida resident and one of the Estate’s two beneficiaries, was assigned the Estate’s re *865 maining legal claims. She filed in the New Jersey Superior Court, Law Division, this action against defendants on August 1, 2007. Relying on diversity of citizenship, defendants removed the case to the United States District Court for the District of New Jersey.
Plaintiff subsequently filed an amended complaint alleging four causes of action. In count one, she asserted negligence, claiming that defendants owed the Estate a duty of care after receiving notice of possible Slayer Act claims and that defendants breached that duty by permitting Dr. Schwartz to withdraw $93,750 from the annuity. Count two alleged that defendants violated New Jersey’s Slayer Act, specifically N.J. Stat. Ann. § 3B:7-7, by allowing Dr. Schwartz to remove money from the annuity. In count three, plaintiff contended that defendants, by permitting the withdrawal, engaged in an unconscionable commercial practice and, therefore, violated New Jersey’s Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2. Finally, count four alleged that defendants breached their fiduciary duty to the Estate by allowing the withdrawal.
Defendants filed a motion to dismiss arguing, among other things, that plaintiffs claims were barred by New Jersey’s six-year statute of limitations, N.J. Stat. Ann. § 2A:14-1. According to defendants, because Dr. Schwartz withdrew money from the annuity in December 1999 and plaintiff waited over eight years to file her complaint on August 1, 2007, her claims were time-barred. In addition, defendants asserted that even if New Jersey’s discovery rule applied, it could only toll the statute of limitations until June 29, 2001, the first day of the Wasserman trial. By then, defendants reasoned, the Estate would have to have known about Dr. Schwartz’s withdrawal, yet plaintiffs complaint was filed more than six years after the Wasserman trial began.
The District Court agreed with defendants that the statute of limitations barred plaintiffs suit. Any injury to the Estate, the Court believed, occurred prior to the Wasserman judgment, and the discovery rule delayed the accrual of plaintiffs causes of action until, at the latest, July 11, 2001, the final day of the Wasserman trial. By that date, the Estate would have read its own expert’s report and heard testimony that defendants had allowed Dr. Schwartz to withdraw money from the annuity. Because plaintiff filed her complaint more than six years after July 11, 2001, the District Court granted the defendants’ motion to dismiss.
Plaintiff appealed and argues that her complaint was timely filed. She contends, among other things, that she did not have the right to institute and maintain the Estate’s claims against defendants until after the September 14, 2001 judgment. We agree.
Our review of a “district court’s dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is plenary.” Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir.2005). We must “accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to ... plaintiff[ ]•” Id- However, we “need not credit either ‘bald assertions’ or ‘legal conclusions’ in [the] complaint.” Id. (citation omitted).
The parties do not dispute that New Jersey’s relevant statute of limitations required that plaintiffs claims “be commenced within 6 years ... after the cause of any such action shall have accrued.” N.J. Stat. Ann. § 2A:14-1. The New Jersey Supreme Court has “identified the accrual of [a] cause of action as the date on which ‘the right to institute and maintain a suit’ first arose.” Rosenau v. City of New Brunswick, 51 N.J. 130, 238 A.2d 169, 172 *866 (1968) (citation omitted). “That phrase refers to the ‘combination of facts or events which permits maintenance of a lawsuit; the time of occurrence of the last of these requisite facts is thereby made the critical point of [the] inquiry.’ ” Russo Farms, Inc. v. Vineland Bd. of Educ., 144 N.J. 84, 675 A.2d 1077, 1083-84 (1996) (citation omitted). A cause of action will therefore be said to have accrued only at the time all of its elements have occurred. See Rosenau, 238 A.2d at 172-74 (explaining that a cause of action “grounded on negligent injury or damage to person or property ... accrue[s] not when the negligence itself took place but when the consequential injury or damage occurred,” and finding that plaintiffs could institute an action many years after the negligent act, the improper manufacture of a water meter, because only when the meter broke was the plaintiffs’ property damaged); see also Holmin v. TRW, Inc., 330 N.J.Super. 30, 748 A.2d 1141, 1145 (N.J.Super.Ct.App.Div.2000) (the plaintiff’s cause of action accrued when he suffered damages from fraud, not when the fraudulent act occurred).
Our review of this case’s unique facts convinces us that plaintiffs claims against defendants did not accrue until September 14, 2001, the date of the Wasserman opinion and judgment. Plaintiff’s causes of action require the suffering of a loss or damages. See, e.g., Polzo v. County of Essex, 196 N.J. 569, 960 A.2d 375, 384 (2008) (actual damages are an element of negligence); Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 541 A.2d 1063, 1067 (N.J.1988) (an “ascertainable loss” is an essential element of a private cause of action for a violation of New Jersey’s Consumer Fraud Act); In re Estate of Lash, 169 N.J. 20, 776 A.2d 765, 770 (2001) (breach of fiduciary duty is a tort and that “[o]ne standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation” (emphasis supplied) (citation omitted)). Despite the District Court’s belief and defendants’ assertions to the contrary, we do not believe that Mrs. Schwartz’s Estate could claim to have been damaged prior to September 14, 2001.
At the time of the withdrawal in December 1999, the Estate had no legal interest in or right to the funds in the annuity. Dr. Schwartz enrolled in the annuity prior to his marriage and never made his wife a beneficiary. In addition, Mrs. Schwartz waived her right to receive survivor benefits under the annuity, and the annuity expressly stated that “[n]o amount payable ... will in any way be subject to any claim against [the] payee.”
On September 14, 2001, however, the Wasserman court provided the Estate with a $689,338 award based, in part, on funds held in the annuity at the time of Mrs. Schwartz’s death. Therefore, the Estate’s injury did not arise — i.e., the cause of action did not fully accrue — until September 14, 2001, the date of the Wasser-man opinion. Any suit filed prior to that date would have been premature.
Defendants and the District Court focus on the discovery rule and the date on which the Estate had knowledge of Dr. Schwartz’s withdrawal to conclude that plaintiffs cause of action accrued, at the latest, on July 11, 2001. This is not, however, a discovery rule case. New Jersey courts developed the discovery rule “[t]o prevent the sometimes harsh result of a mechanical application of the statute of limitations.” Martinez v. Cooper Hosp.Univ. Med. Ctr., 163 N.J. 45, 747 A.2d 266, 270 (2000). The rule “provides that ... a cause of action will be held not to accrue until the injured, party discovers, or by an exercise of reasonable diligence and intelligence should have discovered!,] that he may have a basis for an actionable claim.” Id. (emphasis supplied) (internal quotation *867 marks and citation omitted). Unless a party has been injured, therefore, the rule has no application. See id. (discussing the requirements for satisfying the rule).
As explained, the Estate’s injury did not materialize until the September 14, 2001, Wasserman judgment. At the time of both the withdrawal and the Estate’s subsequent knowledge of it, whether June 29 or July 11, 2001, the Estate’s claims were not yet complete; only the possibility of injury existed. See Holmin, 748 A.2d at 1151 (explaining that “a cause of action accrues when a plaintiff has been injured or damaged ... [and that] [p]rior to that date, he or she is faced only with an anticipation of possible injury, which may or may not occur”). The Wasserman court, among other things, could have ruled in favor of Dr. Schwartz and denied equitable distribution or issued an award that did not include funds from the annuity. Because the Estate’s claims became complete only upon the September 14, 2001, Wasser-man judgment, the statute of limitations did not begin to run until that date.[1]
Accordingly, we conclude that the District Court erred in finding that New Jersey’s statute of limitations barred this suit. Plaintiffs causes of action did not accrue until September 14, 2001, and her complaint, docketed August 1, 2007, was timely filed within six years. The order of the District Court granting defendants’ motion to dismiss will be vacated, and the case remanded for further proceedings.[2]

. We are not holding, as our colleague's dissent opines, that plaintiff "discovered" a new legal theory on the date of the Was-serman decision. As we have stated, the discovery rule plays no role in this case. Instead, we hold that the cause of action became complete (and thus the statute of limitations began to run) when plaintiff obtained an enforceable legal interest in the annuity by virtue of the Wasserman ruling. We agree that plaintiff may have known prior to the judgment that the Estate could receive a legal interest in the annuity, should it be awarded an ownership interest by the Wasserman court. However, the Estate had no legal interest in the annuity until the September 14, 2001, decision.

. Because we find that the District Court erred in granting defendants' motion to dismiss, we need not address plaintiff's argument that the Court also erred by resolving facts not apparent from the complaint and viewing facts in favor of defendants.